UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT KNOXVILLE

KENNETH C. DAVIS,                          )
                                           )
            *Petitioner*,                  )
                                           )
v.                                         )        No.: 3:11-CV-523-TAV-CCS
                                           )
DERRICK D. SCHOFIELD, Commissioner,        )
Tennessee Department of Correction,        )
                                           )
            *Respondent*.                  )

## <u>MEMORANDUM OPINION</u>

Kenneth C. Davis ("Petitioner"), a Tennessee inmate acting *pro se*, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging the legality of his confinement under a 2006 Sevier County, Tennessee Criminal Court judgment [Doc. 2]. A jury convicted Petitioner of identity theft and violation of the habitual motor vehicle offender statute, for which he is serving a sentence of twelve years. Respondent has filed an answer to the petition, which is supported by copies of the state record [Doc. 8; Addenda Nos. 1–4]. Respondent subsequently filed a motion to construe the answer as a motion for summary judgment [Doc. 10], which the Court denied [Doc. 14]. Petitioner has failed to respond to Respondent's answer, and the time for doing so has passed.

## I.      PROCEDURAL HISTORY

Petitioner's convictions were affirmed on direct appeal by the Tennessee Court of Criminal Appeals ("TCCA"), *see State v. Davis*, No. E2006-01459-CCA-R3-CD, 2007 WL 1259206 (Tenn. Crim. App. Apr. 30, 2007), and the Tennessee Supreme Court

denied permission to appeal. Petitioner's subsequent application for post-conviction relief was denied by the trial court, and affirmed on appeal by the TCCA. *Davis v. State*, No. E2010-00022-CCA-R3-PC, 2011 WL 319394 (Tenn. Crim. App. Jan. 27, 2011). The Tennessee Supreme Court denied permission to appeal. Petitioner next filed this timely application for habeas relief.

## II.    BACKGROUND

The following summary of the factual background is taken from the TCCA's opinion on direct appeal of Petitioner's conviction.

> At trial, the jury heard the testimonies of Officer James Roberts of the Sevierville Police Department and the [Petitioner]. According to Officer Roberts, on March 22, 2005, he stopped a vehicle for driving sixty-two miles per hour in a thirty-five mile per hour zone. Officer Roberts identified the [Petitioner] as the driver of the vehicle. When Officer Roberts approached the vehicle, the [Petitioner] identified himself as Mitchell L. Davis. Even though the [Petitioner] was unable to produce a driver's license, he provided Officer Roberts with a social security number as identification. The [Petitioner] did not appear to be under the influence of alcohol or drugs.
>
> Officer Roberts testified that the car also held a female passenger in the front seat and a male passenger in the back seat. Officer Roberts stated that Mitchell Davis' driver's license was revoked, but that he decided to issue the [Petitioner] a misdemeanor citation and release him.
>
> Sometime later that morning, Officer Roberts responded to a call about an incident at the Wal-Mart in Sevierville involving the [Petitioner]. When Officer Roberts arrived on the scene, he learned that the [Petitioner], who had previously identified himself as Mitchell Davis, was really Kenneth C. Davis. A check of the [Petitioner's] driver's license number revealed that the [Petitioner] was a habitual motor vehicle offender.

2

Officer Roberts also discovered that Mitchell Davis was the [Petitioner's] brother and that his social security number was one digit different from the [Petitioner's]. When Officer Roberts observed the [Petitioner] at Wal-Mart, he appeared to be under the influence of drugs.

Officer Roberts explained that when the blue lights on his patrol car are activated, an onboard video camera begins recording. When Officer Roberts was preparing to testify in front of the grand jury, he discovered that the video tape or video camera used during the [Petitioner's] stop for speeding malfunctioned and that there was nothing on the tape. Officer Roberts attempted to watch the tape on two different VCRs, but there was nothing on the tape.

The [Petitioner] testified in his own defense at trial. According to the [Petitioner], Officer Roberts did not stop him for speeding, rather he and two other people were in the car and were already stopped in a parking lot at the Co-op when Officer Roberts approached the car and addressed him as "Mitchell." The [Petitioner] stated that the officer asked him for his social security number and birth date. The [Petitioner] claimed that he told the officer that he was illiterate and did not know his social security number. The [Petitioner] also claimed that he was sitting on the passenger side of the vehicle and never saw the officer activate his blue lights. The [Petitioner] admitted that he was an habitual motor vehicle offender.

At the conclusion of the trial, the jury found the [Petitioner] guilty of identity theft and driving after being declared an habitual motor vehicle offender. After a sentencing hearing, the trial court sentenced the [Petitioner] to twelve years as a career offender for identity theft and six years as a career offender for driving in violation of the habitual motor vehicle offender act. The trial court ordered the sentences to run concurrently, for a total effective sentence of twelve years.

*State v. Davis*, 2007 WL 1259206, at *1–2.

## III.   STANDARD OF REVIEW

Under the Antiterrorism and Effective Death Penalty Act ("AEDPA"), codified in 28 U.S.C. § 2241, *et seq.*, a court considering a habeas claim must defer to any decision by a state court concerning the claim unless the state court's judgment: (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding.  28 U.S.C. § 2254(d)(1)–(2).

A state court's decision is "contrary to" federal law when it arrives at a conclusion opposite to that reached by the Supreme Court on a question of law, or resolves a case differently on a set of facts which cannot be distinguished materially from those upon which the precedent was decided.  *Williams v. Taylor*, 529 U.S. 362, 413 (2000).  Under the "unreasonable application" prong of § 2254(d)(1), the relevant inquiry is whether the state court decision identifies the legal rule in the Supreme Court cases which govern the issue, but unreasonably applies the principle to the particular facts of the case.  *Id*. at 407.  The habeas court is to determine only whether the state court's decision is objectively reasonable, not whether, in the habeas court's view, it is incorrect or wrong.  *Id*. at 411.

The § 2254(d) standard is a high standard to satisfy.  *Montgomery v. Bobby*, 654 F.3d 668, 676 (6th Cir. 2011) (noting that "§ 2254(d), as amended by AEDPA, is a purposefully demanding standard . . . 'because it was meant to be.'") (quoting *Harrington v. Richter*, 131 S. Ct. 770, 786 (2011)).  Further, findings of fact which are sustained by

4

the record are entitled to a presumption of correctness—a presumption which may be rebutted only by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

## IV. ANALYSIS

Petitioner's § 2254 habeas corpus petition raises four main grounds for relief: (1) insufficient evidence to support the conviction of identity theft; (2) the state's destruction of the videotape of his traffic stop violated his due process rights; (3) the TCCA denied his right to proceed *pro se* on appeal; and (4) several instances of ineffective assistance of counsel [Doc. 2].

In his answer, Respondent argues that Petitioner is not entitled to relief on Grounds one, two, and four because the state court decisions rejecting the claims on their merits are entitled to deference under 28 U.S.C. § 2254 [Doc. 8]. Respondent also argues that Ground three is not a federally cognizable claim, and is subject to dismissal [Doc. 8].

The Court agrees with the Respondent concerning Petitioner's entitlement to habeas relief, and for the reasons which follow, will **DENY** and **DISMISS** this case. Petitioner's Grounds for relief will be discussed in the order in which they were presented.

### A. Insufficient Evidence

In his first claim, Petitioner contends that the evidence produced at trial was insufficient to support a conviction of identity theft under the applicable Tennessee statute. As support for his claim, Petitioner alleges that there were inconsistencies and discrepancies regarding the state's witness, and coupled with a lack of video evidence,

5

the testimony could not be corroborated. Petitioner claims that the proof presented at trial, even when viewed in a light favorable to the state, merely supported a conviction of criminal impersonation, not identity fraud.

### 1. Applicable Law

The United States Supreme Court's decision in *Jackson v. Virginia*, 443 U.S. 307 (1979), provides the controlling rule for resolving claims of insufficient evidence. *See Gall v. Parker*, 231 F.3d 265, 287–88 (6th Cir. 2000) (identifying *Jackson* as the governing precedent for claims of insufficient evidence), *superseded by statute on other grounds as recognized by Parker v. Matthews*, 132 S. Ct. 2148 (2012). In *Jackson*, the Supreme Court held that evidence, when viewed in the light most favorable to the prosecution, is sufficient if any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. 443 U.S. at 319. Resolving conflicts in testimony, weighing the evidence, and drawing reasonable inferences from the facts are all matters which lie within the province of the trier of fact. *Id.*; *see also Cavazos v. Smith*, 132 S. Ct. 2, 6 (2011) ("[A] reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" (quoting *Jackson*, 443 U.S. at 326)).

A habeas court reviewing an insufficient evidence claim must apply two levels of deference. *Parker v. Renico*, 506 F.3d 444, 448 (6th Cir. 2007). Under *Jackson*, deference is owed to the fact finder's verdict, "with explicit reference to the substantive

6

elements of the criminal offense as defined by state law." *Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (citing *Jackson*, 443 U.S. at 324 n.16). Under AEDPA, deference is also owed to the state court's consideration of the trier-of-fact's verdict. *Smith*, 132 S. Ct. at 6 (noting the double deference owed "to state court decisions required by § 2254(d)" and "to the state court's already deferential review."). Hence, a petitioner bringing a claim of insufficient evidence "bears a heavy burden." *United States v. Vannerson*, 786 F.2d 221, 225 (6th Cir. 1986).

### 2. Discussion

In its opinion, the TCCA discussed the definition of the offenses of identity theft and violation of the habitual motor vehicle offender law in Tennessee. Citing to Tenn. Code Ann. § 39-14-150(b), the TCCA stated: "A person commits the offense of identity theft who knowingly obtains[,] possesses[,] buys, or uses the personal identifying information of another [with the intent to commit any unlawful act . . . .]" *Davis*, 2007 WL 1259206, at *3. The court went on to define personal identifying information as "any name or number that may be used, alone or in conjunction with any other information, to identify a specific individual, including: (1) Name, social security number . . . ." *Id*. (citing Tenn. Code Ann. § 39-14-150(e)(1)). The TCCA next noted that "an individual violates the habitual motor vehicle offender act by operating 'any vehicle in this state while the judgment or order of the court prohibiting the operation remains in effect.'" *Davis*, 2007 WL 1259206, at *3 (quoting Tenn. Code Ann. § 55-10-616(a)).

The TCCA recognized that where the sufficiency of the evidence is challenged, "[t]he relevant question the reviewing court must answer is whether any rational tier of fact could have found the accused guilty of every element of the offense beyond a reasonable doubt." *Davis*, 2007 WL 1259206, at *2 (citing Tenn. R. App. P. 13(e); *State v. Harris*, 839 S.W.2d 54, 75 (Tenn. 1992)). Even though the TCCA did not cite to Supreme Court cases which govern sufficiency of the evidence claims, it was not required to do so for its adjudication to be entitled to the deference owed to state court decisions in § 2254(d). *See Treesh v. Bagley*, 612 F.3d 424, 429 (6th Cir. 2010) (observing that "[t]he state court decision need not cite Supreme Court cases, or even evince an awareness of Supreme Court cases, so long as neither the reasoning nor the result of the state-court decision contradicts them." (citation and internal quotation marks omitted)). The reasoning employed by the TCCA here is identical to the Supreme Court standard espoused in *Jackson*; therefore, its decision was not contrary to the controlling legal rule in Supreme Court cases.

Summarizing the proof which sustained Petitioner's identity theft conviction, the TCCA pointed to evidence showing that Petitioner was driving a vehicle that was stopped for speeding, and when the officer approached him, he gave his brother's name and social security number for identification purposes. The court also noted that Petitioner admitted that he was an habitual motor vehicle offender. Although Petitioner testified to a different version of the facts, the TCCA noted that the jury was within its discretion to decide whose version of the facts to accept. As such, the court concluded that the

8

evidence, when viewed in the light most favorable to the state, was sufficient to sustain Petitioner's identity theft conviction.

Petitioner further contends that the evidence produced at trial does not support an identity theft conviction because the legislature intended to make the offense a property crime, and did not intend it to broadly encompass just any "unlawful activity." Petitioner argues that he did not provide his brother's name for financial or material gain. Although this particular issue was addressed by the trial court, [Addendum No. 1, Vol. 2, p. 10], Petitioner did not raise this argument on appeal. The TCCA stated: "[o]n appeal, the [Petitioner] does not argue that the elements of identity theft were not established beyond a reasonable doubt. Instead, the [Petitioner] argues that Officer Roberts' [sic] had to refresh his memory with his notes during cross-examination." *Davis*, 2007 WL 1259206, at *3. Theories or factual allegations that have not first been offered to the state courts are considered to have been procedurally defaulted. *Wong v. Money*, 142 F.3d 313, 322 (6th Cir. 1998). A court may, *sua sponte*, raise a petitioner's procedural default, even if the state failed to raise the defense. *See Day v. McDonough*, 547 U.S. 198, 209 (2006); *Sowell v. Bradshaw*, 372 F.3d 821, 830 (6th Cir. 2004).

As such, the Court finds that Petitioner's argument concerning the scope of the identity theft statute is procedurally defaulted. In addition, from the evidence outlined above, the Court concludes that the state court reasonably determined that the proof in Petitioner's case was constitutionally sufficient, as the court's application of the *Jackson*

standard was neither unreasonable nor was it based on an unreasonable factual determination.

### B. Destruction of Evidence

Petitioner's next claim asserts that his due process rights were violated because the state destroyed evidence, in form of a videotape of his traffic stop, which could have been exculpatory [Doc. 2]. Petitioner states that the state listed the videotape in its discovery response, and relied on its existence to secure the indictment against Petitioner; however, the state subsequently claimed that the tape only showed a snowy picture due to what must have been an equipment malfunction. Petitioner argues that the tape could have corroborated his version of the facts, and that the state's destruction of the tape was deliberate and in bad faith.

#### 1. Applicable Law

The Due Process Clause of the Fourteenth Amendment requires that the state disclose to criminal defendants "evidence that is either material to the guilt of the defendant or relevant to the punishment to be imposed." *California v. Trombetta*, 467 U.S. 479, 485 (1984) (citing *Brady v. Maryland*, 373 U.S. 83, 87 (1963)). "Even in the absence of a specific request, the prosecution has a duty to turn over exculpatory evidence that would raise a reasonable doubt about the defendant's guilt." *Trombetta*, 467 U.S. at 485 (quoting *United States v. Agurs*, 427 U.S. 97, 112 (1976)).

When the question centers on a state's duty to preserve evidence, that "duty must be limited to evidence that might be expected to play a role in the suspect's defense."

10

*Trombetta*, 467 U.S. at 488. "To meet this standard of constitutional materiality, evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *Id*. at 489 (citing *Agurs*, 427 U.S. at 109–10). Under Supreme Court precedent, "[s]o long as government officials do not destroy evidence 'in a calculated effort to circumvent the disclosure requirements established by *Brady v. Maryland* and its progeny,' so long as they act 'in good faith and in accord with their normal practice,' and so long as 'the record contains no allegation of official animus towards the criminal defendant or of a conscious effort to suppress exculpatory evidence,' their actions do not offend the Due Process Clause." *United States v. Generett*, 149 F. App'x 432, 434 (6th Cir. 2005) (quoting *Trombetta*, 467 U.S. at 488).

### 2.  Discussion

Petitioner argued that he was prejudiced by the loss and/ or destruction of the videotape containing a recording of his traffic stop, contending that the evidence on the tape could have been exculpatory. *Davis*, 2007 WL 1259206, at *3. The TCCA, citing *Brady v. Maryland*, and *California v. Trombetta*, identified the governing standard concerning a state's duty to preserve evidence, and concluded that the videotape that Petitioner claims was destroyed never existed, thus, finding that the "[s]tate cannot destroy evidence that does not exist." *Davis*, 2007 WL 1259206, at *4. As such, the

11

Court must now determine whether the state court's application of *Brady* and its progeny to the facts of Petitioner's case was unreasonable.

As recounted by the TCCA, Officer Roberts testified that his patrol vehicle was equipped with a video recording device, which he assumed was functioning the day of Petitioner's traffic stop. *Id.* According to Officer Roberts, he told the prosecutor that he had a video recording, but did not discover that the recording device must have malfunctioned until he sat down to review the tapes prior to the grand jury hearing. *Id.* Officer Roberts testified that he tried to watch the videotape on two different VCRs, but that there was nothing on the tape. *Id.* The state courts found that the videotape was not lost or destroyed evidence because the failure of the equipment to work was not the equivalent of the state destroying evidence. *Id.*

Although Petitioner claims that the videotape of his traffic stop did, in fact, exist, and that the state deliberately destroyed it, Petitioner has not provided any evidence to show that this is the case. Petitioner has not shown that the state acted in a calculated effort to circumvent *Brady* disclosure requirements or acted in bad faith, nor does the record show any animus toward the Petitioner. As such, the Court cannot find that the state court's determination of the facts before it was unreasonable. Relief is, therefore, not warranted here.

## C. Right to Proceed *Pro Se* on Appeal

Petitioner next asserts that his Sixth Amendment rights were violated because he was not permitted to proceed *pro se* on post-conviction appeal [Doc. 2]. Petitioner

contends that his post-conviction appellate counsel changed the adversarial process by presenting arguments which favored the state instead of the Petitioner, and that counsel labored under a conflict of interest because he informed the court that there were no meritorious issues to raise [Doc. 2]. The TCCA denied Petitioner's motion to proceed *pro se* on appeal, stating that Petitioner's request was not timely, and was not asserted in a clear and unequivocal manner [Addendum No. 4, Doc. 5].

Respondent argues that this claim is subject to dismissal because it does not allege the violation of a federal constitutional right [Doc. 8]. The Court agrees. "It is well established that the Sixth Amendment provides a defendant the right to the assistance of counsel, as well as the related right to refuse such assistance in conducting his or her own defense." *Akins v. Easterling*, 648 F.3d 380, 395 (6th Cir. 2011) (citing *Faretta v. California*, 422 U.S. 806, 832–36 (1975)). The Supreme Court, however, has held that there is no right to counsel on discretional appeals, or "when attacking a conviction that has long since become final upon exhaustion of the appellate process." *Pennsylvania v. Finley*, 481 U.S. 551, 555 (1990). Likewise, it follows that there is no constitutional right to self-representation in a post-conviction proceeding. *See, e.g., Cole v. State*, 798 S.W.2d 261, 263 (Tenn. Crim. App. 1990) ("The constitutional right to self-representation, guaranteed by both the United States and Tennessee constitutions, is not applicable to post-conviction proceedings." (citing *Finley*, 481 U.S. at 555)). "Under AEDPA, if there is no 'clearly established Federal law, as defined by the Supreme

13

Court,' that supports a habeas petitioner's legal argument, the argument must fail."
*Miskel v. Karnes*, 397 F.3d 446, 453 (6th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)).

Thus, the Court finds that Petitioner's claim on the denial of his right to proceed *pro se* on post-conviction appeal does not raise a cognizable constitutional claim.

## D. Ineffective Assistance of Counsel

Petitioner's final claim asserts that he received ineffective assistance of counsel from his trial attorney with respect to counsel's failure to investigate all the witnesses with knowledge of Petitioner's innocence, counsel's failure to request jury instructions on the lesser-included offense of fraudulent use of a driver's license, counsel's opening the door to Petitioner's prior convictions, and counsel's conflict of interest [Doc. 2].

### 1. Applicable Law

The Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to have the Assistance of Counsel for his defense." U.S. Const. amend. VI. A criminal defendant's Sixth Amendment right to counsel necessarily implies the right to "reasonably effective assistance" of counsel. *See Strickland v. Washington*, 466 U.S. 668, 687 (1984). Under the *Strickland* standard for proving ineffective assistance of counsel, a defendant must meet a two-pronged test: (1) that counsel's performance was deficient; and (2) that the deficient performance prejudiced the defense. *Id.*

Proving deficient performance requires a "showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the

14

Sixth Amendment." *Id.* The appropriate measure of attorney performance is "reasonableness under prevailing professional norms." *Id.* at 688. A defendant asserting a claim of ineffective assistance of counsel must "identify the acts or omissions of counsel that are alleged to not have been the result of reasonable professional judgment." *Id.* at 690. The evaluation of the objective reasonableness of counsel's performance must be made "from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential." *Kimmelman v. Morrison*, 477 U.S. 365, 381 (1986). It is strongly presumed that counsel's conduct was within the wide range of reasonable professional assistance. *Strickland*, 466 U.S. at 689.

The second prong, prejudice, "requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is unreliable." *Id.* Here, Petitioner must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different." *Moss v. United States*, 323 F.3d 445, 454 (6th Cir. 2003) (quoting *Strickland*, 466 U.S. at 694) (internal quotation marks omitted). Counsel is constitutionally ineffective only if a performance below professional standards caused the defendant to lose what he "otherwise would have probably won." *United States v. Morrow*, 977 F.2d 222, 229 (6th Cir. 1992).

## 2. Discussion

When these claims of ineffective assistance were presented to the TCCA on post-conviction appeal, the court summarily rejected the claims stating that it would "not

15

reevaluate the post-conviction court's findings in these circumstances, as the record more than sufficiently support[ed] them." *Davis*, 2011 WL 319394, at * 7. The TCCA also denied Petitioner's ineffective assistance due to conflict of interest claim stating that Petitioner put forth no proof of how his trial counsel's performance was affected by her representation of other clients. *Id*. at *8. Neither the TCCA nor the post-conviction trial court, however, identified the controlling legal principles that governed their decisions. *See id.*; *see also* [Addendum No. 2, Vol. 6, pp. 42–46].

Where the state court fails to articulate reasons to support its decision, the federal court conducts an independent review of the petitioner's grounds for relief. *Williams v. Anderson*, 460 F.3d 789, 796 (6th Cir. 2006). "'That independent review, however, is not a full *de novo* review of the claims, but remains deferential because the court cannot grant relief unless the state court's result is not in keeping with the strictures of AEDPA.'" *Id.* (quoting *Harris v. Stovall*, 212 F.3d 940, 943 (6th Cir. 2000)). "In other words, [the reviewing court] 'must uphold the state court's summary decision unless the [c]ourt's independent review of the record and pertinent federal law persuades the [c]ourt that its result contravenes or unreasonably applies clearly established federal law, or is based on an unreasonable determination of the facts in light of the evidence presented.'" *Id.* (quoting *Aycox v. Lytle*, 796 F.3d 1174, 1177–78 (10th Cir. 1999) (internal quotation marks omitted)).

### a.     Failure to Investigate Witnesses

As his first example of ineffective assistance, Petitioner contends that his trial counsel failed to investigate all witnesses who may have had information concerning Petitioner's innocence [Doc. 2]. Particularly, Petitioner argues that counsel made no reasonable effort to gather information to locate the two witnesses that were in the vehicle with him during the traffic stop that subsequently led to his arrest [Doc. 2]. According to Petitioner, these witnesses were vital to his defense, and he was prejudiced by counsel's failure to conduct a thorough investigation to locate the witnesses [Doc. 2].

*Strickland* imposes upon an attorney "the obligation to investigate all witnesses who may have information concerning his or her client's guilt or innocence." *Ramonez v. Berghuis*, 490 F.3d 482, 487 (6th Cir. 2007) (citing *Towns v. Smith*, 395 F.3d 251, 258 (6th Cir. 2005)). At the post-conviction hearing, counsel testified that the identity of the two witnesses would have been important to the case; however, Petitioner was never able to identify them [Addendum No. 2, Vol. 6, p. 33]. Counsel testified, however, that she was independently able to find out the name of the female witness, and made attempts to find her [Addendum No. 2, Vol. 6, p. 33]. Counsel also stated that she was never able to find the male witness, and Petitioner could only give her the witness's first name [Addendum No. 2, Vol. 6, p. 33]. Petitioner also testified during the post-conviction hearing that he did not know the name of the female witness, and he only knew the male witness's first name [Addendum No. 2, Vol. 6, p. 23].

17

Here, Petitioner has not overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance. Petitioner has failed to show that there was no thorough investigation of the witnesses in this case. *See, e.g., Webb v. Mitchell*, 586 F.3d 383, 395 (6th Cir. 2009) (observing that the petitioner had failed to "overcome the 'strong presumption' that his trial counsel conducted a reasonable investigation." (citation omitted)). In fact, the testimony presented to the post-conviction court indicates otherwise; counsel did attempt to find out the identity of the witnesses, and just because she failed to do so is not sufficient to overcome the strong presumption of effective assistance under *Strickland*, or the deference owed to the state court's decision under § 2254(d). As such, the Court cannot find that Petitioner is entitled to relief on this claim because the state court's decision does not contravene clearly established law, nor is it an unreasonable determination of the facts in light of the evidence presented to it.

### b. Failure to Request Instruction on Lesser-Included Offense

Petitioner next argues that his trial counsel was ineffective for failing to request a jury instruction on the lesser-included offense of fraudulent use of a driver's license [Doc. 2]. Petitioner particularly alleges that according to the prosecution's theory of the facts, the record would have supported a conviction of fraudulent use of a driver's license as a lesser-included offense, even though he did not provide a physical license, and that counsel's failure to request the instruction led the jury to believe that they had no choice but to convict him on the identity theft charge [Doc. 2].

18

The Supreme Court has held that "[a]lthough the lesser included offense doctrine developed at common law to assist the prosecution in cases where the evidence failed to establish some element of the offense originally charged, it is now beyond dispute that the defendant is entitled to an instruction on a lesser included offense if the evidence would permit a jury rationally to find him guilty of the lesser offense and acquit him of the greater." *Keeble v. United States*, 412 U.S. 205, 208 (1973) (footnote omitted).

In support of his argument that he was entitled to an instruction on the lesser included offense of fraudulent use of a driver's license, Petitioner relies on the dissenting opinion in *State v. Bowman*, No. W2003-02389-CCA-R3-CD, 2005 WL 94365 (Tenn. Crim. App. Jan. 13, 2005). This reliance, however, is misplaced. The majority opinion in *Bowman* explicitly found that fraudulent use of a driver's license is not a lesser-included offense of identity theft, because to convict a defendant of the fraudulent use of a driver's license, the state must show proof of the display of or a representation of a driver's license, an element that is not required for identity theft. 2005 WL 94365, at *4. Furthermore, the Supreme Court has adopted a nearly identical test for determining a lesser-included offense. *See Schmuck v. United States*, 489 U.S. 705, 716 (1989) ("[O]ne offense is not 'necessarily included' in another unless the elements of the lesser offense are a subset of the elements of the charged offense. Where the lesser offense requires an element not required for the greater offense, no instruction is to be given . . .." (citing Fed. R. Crim. P. 31(c)).

Accordingly, the Court cannot find that Petitioner was prejudiced by counsel's failure to request a jury instruction for an offense that is not properly considered a lesser-included offense of the offense charged. Therefore, Petitioner is not entitled to relief here because he has not overcome the deference owed to the state court's determination under § 2254(d).

### c.    Opening the Door to Petitioner's Prior Convictions

Petitioner's next claim of ineffective assistance of counsel alleges that his trial counsel was ineffective for opening the door to his prior convictions, thereby allowing the state to question him about them on cross-examination. Petitioner contends that trial counsel's deficient performance here allowed him to be convicted based on his prior convictions, rather than the evidence presented at trial [Doc. 2]. Petitioner also states that no hearing was held outside of the presence of the jury to determine the admissibility of his prior convictions, as required by the Tennessee Rules of Evidence [Doc. 2].

 Under Rule 609(a) of the Tennessee Rules of Evidence, evidence of the prior convictions of a witness are admissible if the convictions are of a "crime punishable by death or imprisonment in excess of one year under the law which the witness was convicted or, if not so punishable, the crime must have involved dishonesty or false statement." Tenn. R. Evid. 609(a)(2). The rule also provides that where the witness is the defendant, the state must give reasonable written notice of its intent to introduce the prior conviction, and the court must determine that the conviction's probative value outweighs its prejudicial value, upon request. Tenn. R. Evid. 609(a)(3).

During the post-conviction hearing, counsel testified that the state filed a notice of its intent to use Petitioner's prior convictions well in advance of trial [Addendum No. 2, Vol. 6, p. 35]. Counsel also testified that she reached an agreement with the state before trial as to which convictions would be used, and which ones would not, and attempted to lessen the impact of the convictions by introducing them during her direct examination of Petitioner [Addendum No. 2, Vol. 6, p. 36].

*Strickland* instructs that "strategic choices made after thorough investigation of law and facts relevant to plausible options are virtually unchallengeable." 466 U.S. at 690. Petitioner elected to take the stand at trial, putting his credibility at issue through character evidence under Tenn. R. Evid. 609. While the record does not indicate that trial counsel requested a hearing on the admissibility of Petitioner's prior convictions, counsel testified that the state filed notice of its intent to use the prior convictions. Petitioner has not overcome the strong presumption that counsel's claimed misstep "might be considered sound trial strategy." *Id*. at 689. Likewise, Petitioner has not shown that counsel decision to introduce Petitioner's prior convictions, to lessen the impact from the prosecution, was an unreasonable strategic choice.

Therefore, the Court finds that Petitioner is not entitled to relief on this issue, as the state court's denial of relief is not contrary to established Supreme Court precedent, nor did the state court unreasonably determine the facts presented before it.

### d. Conflict of Interest

Petitioner's final claim of ineffective assistance of counsel alleges that his trial counsel was ineffective because she was laboring under a conflict of interest by representing thirty-six other clients, and that these representations affected her ability to provide him with effective representation [Doc. 2].

When dealing with ineffective assistance of counsel due to conflict of interest, "to establish a violation of the Sixth Amendment, a defendant who raised no objection at trial must demonstrate that an actual conflict of interest adversely affected his lawyer's performance." *Cuyler v. Sullivan*, 446 U.S. 335, 348 (1980). "A defendant who shows that a conflict of interest actually affected the adequacy of his representation need not demonstrate prejudice in order to obtain relief." *Id*. at 349–50. However, "until a defendant shows that his counsel actively represented conflicting interests, he has not established the constitutional predicate for his claim of ineffective assistance." *Id*. at 350. The Supreme Court has found that *Sullivan*'s presumed prejudice is met in cases where there is a conflict of interest due to multiple concurrent representation. *See Mickens v. Taylor*, 535 U.S. 162 (2002). The Sixth Circuit, however, "has consistently held that for § 2254 cases, the *Sullivan* standard does not apply to claims of conflict of interest other than multiple concurrent representation; in such cases, . . . the *Strickland* standard applies." *Stewart v. Wolfenbarger*, 468 F.3d 338, 351 (6th Cir. 2006) (citations omitted).

Here, Petitioner has not alleged multiple concurrent representation as envisioned by the court in *Mickens*; as such, the *Sullivan* presumption of prejudice does not apply.

22

*See Stewart*, 468 F.3d at 351. Furthermore, Petitioner has not shown deficient performance under *Strickland*. Petitioner argues that his counsel was somehow deficient because she was attempting to juggle an unmanageable case load. At the post-conviction hearing, counsel testified that she was actually handling closer to sixty cases, but that Petitioner received better than adequate representation and that she put a lot of time and effort into research for his motions and in preparation for trial [Addendum No. 2, Vol. 6, p. 38]. The Court cannot find anything in the record that leads it to believe that trial counsels' performance was deficient. Rather, the record indicates otherwise. Trial counsel raised pertinent issues in form of pre-trial motions, during the trial, and post-trial in her motion for a new trial. There is no evidence that counsel was burdened by a conflict of interest because she had approximately sixty other cases. Any other conclusion forces the Court to speculate.

Accordingly, the Court finds that Petitioner is not entitled to relief on this claim because he has failed to show that the state court's determination was contrary to federal law, or involved an unreasonable determination of the facts before it.

**V.     Conclusion**

Based on the above mentioned reasons, the Court finds that none of Petitioner's claims warrant issuance of a writ; therefore, Petitioner's petition for a writ of habeas corpus [Doc. 2] will be **DISMISSED**.

## VI.    Certificate of Appealability

The Court must consider whether to issue a Certificate of Appealability ("COA"), should Petitioner file a notice of appeal.  Under 28 U.S.C. § 2253(a) and (c), a petitioner may appeal a final order in a habeas proceeding only if he is issued a COA, and a COA may only be issued where a Petitioner has made a substantial showing of the denial of a constitutional right.  *See* 28 U.S.C. § 2253(c)(2).  Where a claim has been dismissed on the merits, a substantial showing is made if reasonable jurists could conclude the issues raised are adequate to deserve further review.  *See Miller-El v. Cockrell*, 537 U.S. 322, 327, 336 (2003); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).  When a claim has been dismissed on procedural grounds, a substantial showing is demonstrated when it is shown that reasonable jurists would debate whether a valid claim has been stated and whether the court's procedural ruling is correct.  *Slack*, 529 U.S. at 484.

After reviewing each of Petitioner's claims, the Court finds that reasonable jurists could not conclude that Petitioner's claims are adequate to deserve further review, nor would reasonable jurists debate the correctness of the Court's procedural ruling.  As such, because Petitioner has failed to make a substantial showing of the denial of a constitutional right, a COA will not issue.

ORDER ACCORDINGLY.


s/ Thomas A. Varlan
CHIEF UNITED STATES DISTRICT JUDGE